Here ye, here ye, here ye, this Honorable Philip Corbett, 2nd Judicial District, is now back in session for pursuant to adjournment. The Honorable Robert D. McLaren, presiding. Please be seated. I promise this case will be docked at 2-15-0493. Patricia Russell. Honorable Mr. McAleen, the City of Aurora Detention Center. Everyone on behalf of Mr. McAleen, Mr. McAleen, Mr. Rose, everyone on behalf of Mr. Philip, join us in a moment.  Mr. Rose. Good afternoon. Good evening. May it please the Court, my name is Matthew Rose. I represent the City of Aurora. This appeal involves issues of statutory interpretation under the Illinois Human Rights Act and the Illinois Tort Immunity Act. The City argues that the plain language of both statutes does not preclude a claim for damages under the Illinois Human Rights Act, or immunity from damages under the Illinois Human Rights Act, nor does it authorize, as a civil rights violation in employment, the conduct specifically set forth and alleged in Counts 1 and Counts 4 of plaintiff's complaint, that Count 1 is the reasonable accommodation based on a disability to take appropriate action to correct or prevent the alleged harassment of the co-worker's hostile work environment, and Count 4 is the hostile work environment based on the co-worker's harassment. Turning to the City argues, as I said, that the plain language of the statute requires these results. The plaintiff's argument, on the other hand, is that the General Assembly did not mean what the plain language says because that would result in a perceived injustice or, you know, error or omission that this Court and not the General Assembly should correct. And it's the City's contention that the plain language is the best indicator of legislative intent, and if the statute needs to be expanded to include the conduct set forth in Counts 1 and Counts 4 as specific as independently cognizable civil rights violations, then it's the General Assembly that must do that. And if the General Assembly wants to exempt IHRA claims from damages, then it's the General Assembly that must do that. And both statutes specifically set forth that mechanism for doing so. For example, under the Illinois Tort Immunity Act, Section 2101 of the Illinois Tort Immunity Act specifically provides that the Tort Immunity Act will apply to X, Y, Z, you know, to all claims except for those that are exempted, such as those based on contract or the workers' compensation claim. It does not specifically exempt Illinois Human Rights Act claims. In order to exempt Illinois Human Rights Act claims, the General Assembly would need to amend Section 2101 to include the Illinois Human Rights Act, or it could pass something in the Illinois Human Rights Act which would specifically and expressly exempt it. As for the Illinois Human Rights Act, Section 1103D of the Illinois Human Rights Act specifically says that for its definition of civil rights violation, it only attends to those conduct that is specifically set forth in Article II. And Article II, according to the plain language of the statute, does not extend to a civil rights violation based on non-sexual harassment claims, nor does it extend a civil rights violation for reasonable accommodation beyond any protected category or other. Haven't there been other types of cases recognized, though? For example, the plaintiff cites Bellwood, which is a racial hostile work environment case. All those cases were prior to the amendment in 1984. Bellwood is a 1982-1981, I think, conduct claim. And it specifically recognized for Bellwood there, there was a termination claim. Right, but isn't the whole theory, though, that the amendment was a clarification, not a true amendment? Well, there's two responses to that. Even if it's a clarification, the city still wins because it only clarifies that sexual harassment claims can be brought under 2102A or 2102D. It does not say that disability harassment claims can be brought under 2102A. If the General Assembly can clarify that sexual harassment claims can be brought, then it can surely do so for disability harassment claims. And the reason why that clarification analysis, why the General Assembly should do it, is set forth kind of in the second certified question and not this Court. Because what happened when the General Assembly quote-unquote clarified that sexual harassment claims can be brought under 2102A, what they did is that they expanded the scope of a sexual harassment claim to include harassment based on opposite or same sex and to include strict liability for any supervisory sexual harassment and to include claims that do not result in a tangible employment action. So I want to make perfectly clear that the city's argument is that you could have a hostile work environment claim under 2102A, the discrimination statute, but it has to result in a tangible employment action. So let's say there was a hostile work environment that resulted in a constructive discharge, that would be a cognizable civil rights discrimination claim. But if there is one, if there's a harassment claim that does not result in a tangible employment action, i.e. just a general harassment claim, that is not cognizable under the Illinois Human Rights Act, unless it's brought under 2102D. Well, let me ask this. I mean, the Human Rights Act is a remedial statute, which means that it should be construed liberally. So is that meaningless here then? No. I mean, how do you apply that to what you've just told us? I mean, where does the liberal construction and interpretation come in then? There should be a liberal construction, but you cannot negate the plain text of the statute. First of all, the definition of the civil rights action under the Illinois Human Rights Act says that it's expressly limited to that conduct that's set forward. And then a liberal construction which says that you can have hostile work environment claims that do not result in a tangible employment action against non-sex categories would negate the specific statutory intent that was put forth in 2102D. It would nullify it. And, for example, the Illinois Supreme Court was not necessarily concerned about a liberal construction when it dealt with a racial classroom environment case in the SIU, the Board of Trustees case. A liberal construction would have said that you could have brought such a case under Article 5A-102, but the Supreme Court said, no, we're going to interpret the plain language of the statute. And that plain language, the liberal construction, only comes in if there's an ambiguity in the statute. And here there is no ambiguity. The General Assembly specifically only extended the cause of action for harassment to sex, if we want to correct that, if we think that's an unjust result. The appeal is to the General Assembly and not to this court. Does the commission and its rulings, its policy statements, decisions, have any effect on how we should interpret the statute? There has to be express authorization for, so, for example, the commission has set forth its definition of, you know, what a reasonable accommodation duty is. If there's no express authorization in the statute for a civil rights violation based on reasonable accommodation, then that, you know, the commission cannot create its own duty if there's, you know, that act would be an administrative act in excess of the statute that would be null. But if they do that and the legislature doesn't respond to it, what do we do with it? I don't think that they did that, first of all. I think that what they did is to say that, as Illinois courts have said, is that the reasonable accommodation element is part of the element of the primal facial case for unlawful disability discrimination. It defines when somebody is disabled. If somebody can do the job with reasonable accommodation, they're not disabled. It's not an independent per se or independently cognizable civil rights violation. Unlike, you know, the key textual distinction here is the Federal Civil Rights Act or the Americans with Disability Act and, let's say, the California statute that's in the appendix. Those both set forth separate and independent violations for a reasonable accommodation versus just a general discrimination statute. The Illinois Human Rights Act does that, too. But what it does not do, what it does in its reasonable accommodation statute is it expressively limits it to pregnancy. And the argument that the reasonable accommodation statute would come or that there's a duty under the 2102A, an independent civil rights violation for failing to provide a reasonable accommodation, is negated by the express text of the Illinois Human Rights Act. Because you have under Article II with the pregnancy and under Article III with the disability and real estate transactions, you have specific provisions that say that there's a ban on the terms, conditions, and privileges of employment. And then you have the separate reasonable accommodation statute. So to say that the reasonable accommodation statute could come under the general unlawful discrimination statute would nullify those specific textual violations for the independent reasonable accommodation statutes. Nor is there any case law that I'm aware of that ever says that a reasonable accommodation statute could fall under a general discrimination statute in the terms, conditions, and privileges of employment. In fact, the Fifth District of Olin Corporation rejected that. And under the predecessor to the Illinois Human Rights Act, what was the predecessor to the department, had its own regulation that said that you have to reasonably accommodate religion. And then they said that that was part of the violation under the discrimination in the terms, privileges, and conditions of employment. And the Fifth District said no, they are separate and distinct. And that's because the general ban in the terms, privileges, and conditions of employment is what we call first generation discrimination statute. And that says that you treat different alike. Whereas the reasonable accommodation is to treat different, different. It's the second generation. It's an affirmative action statute. And it said that you have to specifically set forth that different and distinct reasonable accommodation statute, just like it is done in the California courts, just like the California statute, just like what's done in the ADA, and just like what's done in the IHRA, where they set forth the separate and distinct reasonable accommodation violations for pregnancy and disability transactions. I have a question about the third certified question. You say, if yes, should this court modify, reject, or overrule its prior holdings? If the answer is yes, would we not modify or reject our prior holdings? Well, first of all, I think the only holding that could be called into question is Anne Ray Burkett. All the other holdings, I think, are fine because those holdings are based on the federal civil rights claims under Section 1983. What I'm getting at is I think this question is very strangely drawn. Maybe what it should say is something to the effect, should this court modify, reject, and overrule its prior holdings that the Tort Immunity Act applies only to tort actions and does not bar actions for constitutional violations, and determine, therefore, that the Tort Immunity Act applies to all civil actions or a civil action under the Human Rights Act. That would probably be a better framing of the question, Your Honor. Why would we modify or reject? We can't overrule our own appellate court's decisions. Only a superior court can overrule a subordinate court. So the word overrule is irrelevant or immaterial, improper. So explain why we should modify or reject those cases. For instance, Anne Ray Burkett's stance, there's two syllogisms there. One is the Tort Immunity Act does not apply to tort actions or only applies to tort actions, and the second is that it does not bar a constitutional violation. I think that the second may be inapplicable here because there is no constitutional violation. The Article 1, Section 19 of the Disability for Disability only pertains to hiring and promotion tendencies, which is not an issue here. So you can say that you can distinguish it on that basis if you want to. But then when we go towards the first syllogism, that it only applies to tort actions, this court itself has overruled that sub salientio in Anne Ray, Marriage, and Murray, which said that we then applied it to a non-tort action, to the penalty under the Withholding Act. The Illinois Supreme Court has rejected this court's prior reasoning that the Tort Immunity Act only applies to tort claims. It did so in Raintree Homes expressly, and it did so in Village of Bloomingdale by applying it to a non-tort quasi-contract action. And the Fifth District has applied the Tort Immunity Act in the case of Melvin versus, I think, West Frankfort, that it has applied the Tort Immunity Act to cases arising under the disability provision of the Illinois Constitution, and it specifically referenced the Illinois Human Rights Act in that. So if you don't agree with the city's position here, there would be a circuit split on that issue. Is there any factual issue relative to whether or not the plaintiff complied with the policy requirements or the requirements regarding the request for an accommodation? I don't think so, Your Honor. That's two reasons why I don't think so. First is I think they are binding judicial missions in their interrogatories that they did not utilize the city's policies. And I also think that the city's policies, you have to show affirmative compliance. The whole argument here is does a passing comment to a supervisor, which might just be reasonably construed as either a passing comment. Do you want me to finish, Your Honor? Yes. That could be reasonably construed as a mere gripe or personality conflict. Is that enough to trigger IHRA liability, or should they have to affirmatively show compliance with the reasonable reporting mechanisms? And I think for all the reasons set forth in the brief, they have to show affirmative compliance with the reasonable reporting mechanisms. Well, your policy didn't contain specific reporting mechanisms. I beg to differ, Your Honor. The policy says that you can – it depends on the particular policy, but generally that you report it to a – let's say, for example, it's a reasonable accommodation. You have to say that I am requesting a reasonable accommodation to your supervisor. You can appeal that to – you can report that directly to the Human Rights Act. Do you have to include what you think the reasonable accommodation is or just say I want a, quote, reasonable accommodation? I think you have to say what the reasonable accommodation is and what it's for under our policy and under the guidelines that are set forth by the Department. And also when you look at the textual provisions that actually pertain to reasonable accommodation and pregnancy, they say what the – that you have to say what the condition is for and what you're actually requesting as the reasonable accommodation. What are the damages for an accommodation violation? It's a good question, Your Honor, one that I think needs to be answered by the plaintiff because it's our position that only a tangible employment action, an adverse tangible employment action can be cognizable injury under 2102A, the general discrimination ban. So, for example, in this case, we raised in the reply brief, what happens if there's a failure for a reasonable accommodation and yet the jury finds that we lawfully terminated her? What damages, if any, are out there? I don't know. That's the consequence of allowing the cause of action in the first place. The General Assembly is the one that may be in a better position to determine that. So, bottom line, you think this all belongs under the umbrella of one count? Yes. I think that all the conduct alleged subject to the rules of evidence could fall under the unlawful discrimination claim. So, for example, if there was a hostile work environment by coworkers and that resulted in the termination, then that is the material adverse employment action. That's what's being alleged in count two, and it's important to recognize we're not contesting the legal cognizability of count two. So, that is the injury. But if you allow a hostile work environment without a tangible injury or without a tangible adverse employment action, or if you allow one with one, what are the damages you've created? If you allow one with one, you've created two identical counts, which would allow for a double recovery. If you allow one without one, who knows what those damages are? Why would it result in a double recovery if they are merely, if they would fit all under the same umbrella, why are they not necessarily alternative arguments for the same cause of action? Because I think it's a duplicate count. So, what you can do is they can bring count two, the unlawful termination claim, based on disability, and say in that that there's multiple theories that we're alleging here to the jury. We're going to say that there's part of this, there's a hostile work environment. There's also, there might be direct evidence that they could point to of some discriminatory animus, and all of those would lead to the same injury, which is the termination. But if you allow for just a hostile work environment and say that that caused the termination, and then you say that there was another discrimination that caused the termination, then you're, you know, that's the same injury. Okay, you'll have an opportunity to make rebuttal. Thank you. Thank you. Ms. Walters? Yes, Your Honors. Thank you. You may proceed. Your Honors, before I proceed, does Your Honors have any objection to my tendering of the case de Jung v. Superior Court? Opposing counsel has apprised that he has no objection to that. We have none. Okay. Thank you, Your Honors. And also, before I proceed, Your Honors, I would like to point out for the Court's attention that we do have a representative from the Illinois Department of Human Rights here by the name of Erin Anderson, and also the plaintiff, Appali, is here as well. Why was it that the administrative agency was unable to complete the claim within one year? Or the investigation of the claim? May I have an opportunity to confer with my co-counsel, Your Honor? Sure. Thank you. Your Honors, apparently I've been told that the investigator who was assigned on this case became ill and was unable to complete the investigation during that time, and the Department does have a very large caseload, and that resulted in them not being able to timely complete their investigation. Okay. Thank you. Okay. May it please the Court, my name is Joanne Walters, and I represent the plaintiff, Appali, in this matter. Now, before I continue on with my presentation, I would just like, I would request this Court keep in mind that the main issue here is what is the legislature's intent. Once that question is answered, all of the answers will flow from that. So, as it concerns the first... Could I interrupt and say, I don't know that the legislature has contemplated these three questions, so I don't know what the legislature's intent about these three questions might be. And I will address that, Your Honors. So, with regards to what the legislature intended with regards to the first certified question, as Your Honors know, the issue here is whether a disability discrimination claim based on the terms, privileges, and conditions of employment prong under Section 2102A, whether that states a claim. And Oldman Cole does illustrate that the legislature intended for the Illinois Human Rights Act to be broadly construed, liberally construed. And in that regard, Your Honor, the statute clearly provides that a disability discrimination claim based on the terms and privileges and conditions of employment is in fact a claim because that's what the plain language of 2102A says. Now, a defendant would have this Court believe that because of the enactment of 2102D, that illustrates that the legislature did not intend for disability discrimination based on the terms, privileges, and conditions of employment to actually be a claim. And defendant seeks to illustrate that the statute is ambiguous in that regard because 2102D should, 2102A, excuse me, should be construed through the lens of 2102D. And that's simply not the case here, Your Honors. Does the defendant raise the legal maxim, inclusio unius, exclusio alterius? In their brief, they did, Your Honor. Okay, and what's your response? In response to that, the issue, well, the Supreme Court in State v. McCush has said that in cases where a subsequent statutory amendment has been construed as a clarification, which is what Oldman Cole determined, rather than a change in the meaning of the statute, it means that there was some ambiguity which existed in the statute prior to the amendment and that the statutory language as it originally existed did not disclose the clear intent of the legislature. So does that mean that the clarification regarding sexual harassment is also a clarification regarding harassment for the other elements as well? No, Your Honors. The legislature at the time, the legislature enacted 2102D. The issue was whether same-sex and males were being covered under the act. And the legislature determined that, you know, 2102A, the language that is written, the company's employers are not construing it that way. We want to have them include males and same-sex individuals under that coverage. So the legislature wasn't seeking to eradicate or undermine other types of harassment or hostile work environment claims. They wanted to make sure that no one was being left out. So that's why, and the same can be said for 2102J with regards to the amendment at the beginning of last year, providing for pregnancy reasonable accommodation protections. As Your Honors may know, cases have held that pregnancy is not considered a disability. And because of that, employers were not being, were not providing reasonable accommodations to pregnant employees. The legislature didn't like that. That's why they enacted 2102J to clarify that, to send a loud message to employers and the courts to let them know that this is not okay. We need coverage for reasonable accommodations for pregnant employees. And that's why the legislature enacted those two amendments. Because there was, as the amicus stated in its brief, there was inadequate coverage for these specific protected classifications in these specific situations. Well, why isn't this situation one for the legislature then? If the legislature did that based on the current language and carved out two additional specific areas, why wouldn't it have done it for this area if indeed it was to be included? The reason being is because the plain language of the statute of 2102A does sufficiently cover this area, Your Honors. And what part of it do you think covers it then? Under Section 2102A, it provides that you can bring a claim, it's a civil rights violation to discriminate on the basis of disability in the terms, privileges, and conditions of employment. And as Your Honors saw from the case law that we cited, the term, privilege, and condition of employment means can be your work environment. And the cases we cited illustrate the fact that an employee needs to be free from a hostile work environment because that constitutes their term, privilege, and condition. But then does it mean that we are calling a form of discrimination, harassment, even though it is in reality a discrimination based upon the criteria that you just related? Yes, Your Honors. Opposing counsel seeks to use this term, disability harassment, but that's not the claim that we brought, Your Honor. We brought a claim for disability discrimination based on a hostile work environment. So you're saying that he raised a straw man and now is trying to knock it down? I'm not sure I understand your question, Your Honor. Straw men were people who sat around or stood around the courthouse with straw sticking out of their shoes or boots or stockings or whatever. And it meant that they were available for money to testify as to the good character of whomever was willing to pay for them. And normally when you say something like they raise a straw man and then knock him down, he creates this entity, this individual, this thing, this principle, calls it something that it isn't, according to you, and then proceeds to attack it on the basis that it has no real viability in the law. And instead of saying he's basically created a straw man and is attempting to knock it down or, as some other people say, raised a red herring, you're arguing that we have, in fact, stated a cause of action. We really don't need to answer this question in the affirmative or the negative because really it's a semantical exercise. And if what we're supposed to be doing is determining whether or not this litigation is terminated quickly or not, we should be determining whether or not your complaint states a cause of action in discrimination. And if it does, then who cares whether we should or shouldn't call it sexual harassment, pardon me, disability harassment. And it's literally creating or raising a straw man and now deciding whether or not we should allow this straw man to exist. When you say I don't care whether he exists or not, my basis for relief is discrimination based upon disability under the three criteria that you mentioned. That is true, Your Honor. Our claim is brought under Section 2102A. And defendant's argument is that Section 2102D precludes, because of the enactment of 2102D, it evidences that 2102A does not recognize this cause of action, and that's simply not the case here. 2102A is plain on its face. It does recognize this type of action. What about the accommodation and what appears to be some contention regarding whether or not the plaintiff made a proper request under the policy or the manual of the city of Naperville? To address your question in two parts, Your Honor, as far as plaintiff making a request that's recognized under the Act, such are the administrative regulations for the department, 2500.400 specifically provides that an employee is typically the one that initiates the request. And as the case law we cited to in our brief illustrates, the request can be for anything. It just says that they're putting the employer on notice that an accommodation is needed. The plaintiff doesn't have to specifically allege what type of accommodation because that's to be determined through the interactive process. And the type of accommodation that is going to result will be dependent on a number of factors, whether it's cost-effective for the employer, whether the employer can provide it. There's a lot of things that would be taken into consideration. The problem I have with what you just stated, when you said the department, you were talking about the State Department, not the city of Naperville? Correct. I'm talking about the city of Naperville's policy relative to what is required to seek an accommodation from it. Okay, so in regards to the city of Aurora's policy. I'm sorry. In regards to the city of Aurora's policy, it specifically says on page, if your honors have the record in front of you, the policy is on SR-48 and SR-44. And the policy specifically provides that an employee, to make a complaint pursuant to the policy, all they have to do is report it to their supervisor, that either an accommodation is needed or that they're being subjected to harassment. That's exactly what the plaintiff did here. So factually speaking, your honor, given that we still are at the pleading stage and that the factual evidence should be construed in the light most favorable to the plaintiff at this point, there is no issue here because she did, in fact, report her accommodation and her harassment pursuant to the policy. Even though maybe her state of mind wasn't that she was reporting pursuant to the policy at the end of the day, that's exactly what she did. So we're splitting hairs here about what... Well, if there was a jury involved and there was a special interrogatory that indicated that the jury found that she did not request an accommodation in compliance with the city policy, would you agree that any verdict that might be entered in your favor relative to an accommodation claim violation should be vacated and judgment should be entered for the defense? No, your honor. And the reason is because Ponticello v. Aramark says that a plaintiff does not have to state a claim for reasonable accommodation. She does not have to report it pursuant to the employer's policy. She just has to make sure that she alleges that the employer was aware of her request. But how that awareness comes about can be in multiple ways. Aramark specifically says that a plaintiff can use formal channels. She can tell someone who she reasonably believes can handle this type of a complaint or request, or it can come through third parties. Maybe an employee or a co-worker can put the employer on notice. It's not simply limited to just reporting via formal channels, your honor. The legislation is not so narrow. What are the elements of your cause of action? What does the plaintiff have to plead and prove? For which cause of action, your honor? Your reasonable accommodation. Okay. For reasonable accommodation, your honor, I believe we said that. Under the regulations, your honor, she first has to With all due respect, under Illinois law, what does she have to plead and prove? I really don't want you to recite the regulations to me. Okay. Under Illinois law, your honor, she has to prove that she, one, requested an accommodation. And then she has to prove that the employer failed to participate in the interactive process with regards to her request. And then she has to prove, as well, that the failure to provide a request caused her some sort of harm. You mean the failure to give you an accommodation? Correct. Correct. Do you believe that in that count, you also have to prove that there's a disability? Yes, your honor. I would agree with that. May I briefly wrap up, your honor? Yes. Okay. Just to summarize this entire proceedings, your honor, we believe that the legislative intent is clear with regards to the first, second, and third certified questions. And we believe our briefs do justice as far as explaining that. So we would just request that your honors take our position into consideration. And we thank you for your time. Thank you. Thank you. May I please record again, Matthew Brooms, on behalf of the city of Aurora. I wanted to pick up where your honors were questioning. Plaintiff's counsel believes that count one and count four, that the statutory authority for that is under 2102A's privileges, conditions, and terms and conditions language. And there's two reasons why that is wrong. First, for the hostile work environment claim, a harassment hostile work environment claim requires an adverse tangible employment action. That is conceded by the plaintiff in the Hohfeldt case. That, when you have an adverse tangible employment action from a hostile work environment, that means it's something more than just a mere hostile work environment. It means that there is a hostile work environment, and then there was, let's say, a constructive discharge or something like that, that resulted in adverse tangible employment action. That is the critical and the fundamental distinction between a harassment claim and a discrimination claim. So when you do have an adverse tangible employment action resulting from a hostile work environment claim, then you have a cognizable 2102A disability discrimination claim. But that's count two. So when you have the adverse tangible employment action under count one, it's just duplicative of count two. And if you don't have the adverse tangible employment action, then what you have is a harassment claim that has no cognizable injury under the Illinois Human Rights Act. Because there is no material adverse change. There's no term, privilege, or condition that's being changed. Am I to understand that maybe there is a cause of action here, but not necessarily in all the counts? Yes. It is argued that counts one and counts four are not legally cognizable causes of action under the Illinois Human Rights Act. Then how is resolving these issues going to terminate the litigation? Great question, Your Honor. First, it's going to help simplify the litigation. So right now, the harassment claims that the plaintiff, based on the plain reading of the complaint, could go back 20 years and could culminate up to the termination claim. Whereas a termination claim would be focused solely on the termination. It would say to the jury that the only cognizable injury is the termination. It's not all the stuff that preceded it. And when we get to the termination claim, so right now they have 30 plus F1 witnesses that talk about the history, the long potential history, of what the harassment claim would be. Whereas if it's just the termination claim, the city reasonably anticipates that there's going to be less than 10 going forth. You're going to avoid the juror confusion that's going to come about. You're going to avoid the city having to bring on appeal if there was an adverse action in the trial court saying that the Illinois Human Rights Act, the statute, the plain language of the statute, never authorized the harassment claim or the reasonable accommodation claim to begin with. So right now, we can nip that in the bud. That's why it's on the interlocutory appeal here. But let's say you do authorize it, right? Then the trial court had no clue what those causes of action would be, and that's because Illinois law has never allowed them, right? And that is the consequence. That's what the second certified question points to. If you're going to allow causes of action for a reasonable accommodation or for a hostile work environment, you have to spell out what those elements are and what the applicable defenses, if any, are and what the injury is. And that will give immeasurable guidance in the trial court with the litigation. But I think the better approach, and it's the approach that we've always argued in the brief, is that the plain text of the statute does not authorize it. If we think that's unfair, unjust, an omission, that the legislature just did not know what they were doing, go to the legislature. They're the ones that can fix it. And the Illinois Human Rights Act is unique because plain and sole argument is that the terms, privileges, and conditions can come from federal law because that's how federal courts have constructed it. But the federal courts don't have a distinct anti-harassment provision. But the Illinois Human Rights Act does. And our Supreme Court in the Second Amendment said that that was distinct and different. It's much more expansive and protective than federal law. So if you can bring a hostile work environment claim under 2102A, is that going to be one that tracks federal law and is not as expansive? Or is it going to be one that follows Illinois law?  Sure. Any other questions? No. Well, thank you. We will take the case under advisement and render a decision as is apt. Closed adjournment. I think there was one more case today. No, I think it was taken up. Oh, I'm sorry.  There is. We're not adjourned. We're at recess. Thank you.